**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NATHAN MAGGIO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REAL ESTATE EQUITY EXCHANGE, INC. D/B/A UNISON<br><br>Defendant. | : | CIVIL ACTION FILE NO. 1:26-cv-2398 (AMN/CBF)<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nathan Maggio (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id.*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Real Estate Equity Exchange, Inc. d/b/a Unison ("Unison") violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as sending such calls with illegal pre-recorded voices.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

8. Plaintiff Nathan Maggio is an individual residing in Chatham, Columbia County, New York, within this District.

9. Defendant Real Estate Equity Exchange, Inc. d/b/a Unison is a corporation incorporated under the laws of the State of Delaware (Delaware File No. 3763883), formed on March 1, 2004. Defendant's registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, New Castle County, Delaware 19808.

**JURISDICTION AND VENUE**

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

11. This Court has specific personal jurisdiction over Defendant because Defendant purposefully directed the telephone calls at issue to Plaintiff while he was residing in this District, and Plaintiff's claims arise directly from those contacts.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's receipt of the unlawful telephone calls.

## BACKGROUND

The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.

13. The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Cell Phones

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

19. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

20. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

## FACTUAL ALLEGATIONS

22. Defendant Real Estate Equity Exchange, Inc. d/b/a Unison ("Unison") is a company that markets and offers home equity investment products to consumers throughout the United States.

23. Unison markets its products and services to homeowners, including through outbound telephone solicitation campaigns intended to generate interest in its home equity products.

24. Plaintiff Nathan Maggio is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

25. Plaintiff is the subscriber and regular user of the cellular telephone number (408) 823-2724 (the "Subject Number").

26. Plaintiff uses the Subject Number for personal, residential, and household purposes and does not use it for business purposes.

27. The Subject Number is assigned to a cellular telephone service and is also used by Plaintiff as his residential telephone number.

28. Plaintiff registered the Subject Number on the National Do Not Call Registry on February 24, 2009, and the number remained registered at all times relevant to this action.

29. Plaintiff has never conducted business with Unison, requested information concerning its home equity products, or otherwise established a business relationship with Unison.

30. Nevertheless, on October 8, 2026, Defendant initiated at least eight telephone calls to Plaintiff's cellular telephone number.

31. Each of the eight calls resulted in a voicemail message containing the same or substantially similar scripted statements from a caller identifying herself as “Stacy from Unison.”

32. The voicemail messages identified Unison as the company calling.

33. Several of the voicemail messages began with the identical or substantially similar phrase, “Sure, my name is Stacy,” notwithstanding that Plaintiff had not engaged in any conversation with the caller.

34. The repeated introductory language, substantially identical scripts, and uniform delivery of the messages indicate that the calls utilized an artificial or prerecorded voice rather than a live person speaking independently during each call.

35. The calls were directed to an individual identified as “Ruben,” whom Plaintiff does not know.

36. The calls expressly promoted Defendant's home equity products and services. In one voicemail, the caller stated:

> “Hi, this is Stacy from Unison. I'm calling because it looks like Ruben was recently looking into getting some cash from their home equity, and we've got a program where you can get cash for your home equity without any interest or monthly payments.”

37. In another voicemail, the caller similarly stated:

> “Hi, this is Stacy from Unison. I'm calling because it looks like Ruben was recently looking into getting some cash from home equity, and I wanted to share a program where you can get cash without any interest or monthly payments.”

38. Other voicemail messages repeated the same or substantially similar solicitation, including:

> “Hi, this is Stacy from Unison. I'm calling about your recent inquiry into getting cash from your home equity.”

39. In at least two voicemail messages, the caller repeated her introduction and solicitation within the same recording, including the following statement:

> "Hey, Ruben, I'm Stacy from Unison. I call you regarding your request for getting cash out of your home. Please call me back on this number once you get a chance."

40. The voicemail messages expressly advertised Defendant's home equity products, including the purported ability to obtain cash without interest or monthly payments. The calls were therefore made for the purpose of encouraging the purchase of, or investment in, Defendant's products and services.

41. The substantially identical language, repeated introductions, and uniform promotional content across the voicemail messages further demonstrate that Defendant utilized an artificial or prerecorded voice to conduct its telephone solicitation campaign.

42. Plaintiff is not Ruben, has never represented himself to Unison as Ruben, and did not authorize Ruben or anyone else to provide consent on his behalf to receive calls from Unison.

43. Plaintiff did not provide his telephone number to Unison in connection with any inquiry, application, transaction, or request concerning its products or services.

44. The calls were made for the purpose of promoting Unison's business and home equity products and services and constituted telephone solicitations and telemarketing calls.

45. Defendant initiated or caused the calls to be initiated notwithstanding that Plaintiff's telephone number had been registered on the National Do Not Call Registry for more than seventeen years.

46. Defendant initiated or caused more than one telephone solicitation to be initiated to Plaintiff's registered telephone number within a twelve-month period.

47. The calls were made without Plaintiff's prior express consent, including without any prior express written consent to receive telemarketing calls using an artificial or prerecorded voice.

48. Plaintiff preserved recordings of all eight voicemail messages, which demonstrate the substantially similar content and delivery of the calls.

49. The calls were unwanted, invaded Plaintiff's privacy, interrupted his use and enjoyment of his cellular telephone, and caused annoyance, inconvenience, and disruption.

50. Defendant's conduct violated Plaintiff's rights under the TCPA, including the protections against artificial or prerecorded calls to cellular telephone numbers and telephone solicitations to numbers registered on the National Do Not Call Registry.

## CLASS ACTION ALLEGATIONS

51. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

52. Plaintiff brings this action on behalf of himself and the following classes (the “Classes”) pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

53. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) Defendant, or a third party acting on Defendant’s behalf, placed a call using an artificial or prerecorded voice (3) within the four years prior to the filing of the Complaint.

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were registered on the National Do Not Call Registry for at least 31 days; (2) who received more than one telephone solicitation from Defendant or a third party acting on Defendant’s behalf; (3) within a twelve-month period; and (4) within the four years prior to the filing of the Complaint.

54. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes.

55. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

57. This Class Action Complaint seeks injunctive relief and money damages.

58. The Classes, as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

59. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion.

60. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

61. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

62. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

63. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a. Whether Defendant sent multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b. whether Defendant made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

c. Whether Defendant's conduct constitutes a violation of the TCPA; and

d. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

64. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes because the Plaintiff has no interests which are antagonistic to any member of the Classes.

65. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

66. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or their agents.

67. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)(1)(A)(iii)) on behalf of the Robocall Class**

68. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

69. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by initiating or causing to be initiated telephone calls to the cellular telephone numbers of Plaintiff and members of the Robocall Class using an artificial or prerecorded voice without their prior express consent, including the prior express written consent required for telemarketing calls.

70. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

71. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

72. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

73. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

74. The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

75. Defendant's violations were negligent, willful, or knowing.

76. As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

77. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from sending telemarketing calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief prohibiting Defendant from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

C. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: November 20, 2026

Respectfully submitted,

/s/ Anthony I. Paronich
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

/s/ Alex N. Jilizian
Alex N. Jilizian
2629 Manhattan Ave #1002
Hermosa Beach, CA 90254
Paronich Law, P.C.
Telephone: (213) 866-5293
Facsimile: (508) 318-8100
alex@paronichlaw.com

*Counsel for Plaintiff and the Putative Classes*